Hamilton, J.
The aetiqn below was an appeal from the finding of the Industrial Commission of Ohio, denying the right of the claimant, Gussie Taylor, as the widow of John Taylor, to participate in the state insurance fund.
The case was tried to a jury. At the close of plaintiff’s evidence, the defendant, the Industrial *263 Commission, moved for a directed verdict on two grounds: First, that there was no direct or circumstantial evidence of the injury complained of; and, second, that the injury complained of was not received by the decedent in the course of his employment, nor did it arise out of a hazard incident to his employment. The trial court refused the motion on the first ground, but sustained it on the second, and directed a verdict for the defendant.
Did the trial court err in directing a verdict for the defendant ?
While the trial court based its instructed verdict on the second ground of the motion, if the defendant was entitled to an instructed verdict on either ground the judgment would stand; as the court may have rightly instructed the jury, but for the wrong reason.
We will first consider the question whether or not there was any evidence of the injury complained of. The evidence tends to show that Taylor, the deceased, was a nightwatchman at the Peters Cartridge Company’s factory at King’s Mills, Ohio, and was on duty on the night the injury is claimed to have occurred; that he went on duty at 5:11 P. M. and worked until 6:02 A. M., approximately 13 hours. With the sanction of the employer, about 12 o’clock, an hour for lunch, rest and recreation was taken. On the night in question, during the recreation hour, Taylor, who at the time appeared all right, stepped out of the company’s shop on to the company’s property to smoke. In going out he passed down some concrete steps leading from the shop. In a very brief period of time, approximately two minutes, he returned, *264 holding his back and seemingly in pain, and immediately stated to other workmen, as testified to by them, that in going out he had fallen on the concrete steps and injured his spine. Taylor continued to suffer and died three weeks later. There was medical evidence of an injury to the spine.
It is urged by defendant in error that evidence of the workmen as to what Taylor stated regarding the circumstances of the injury was hearsay only, and was improperly admitted over the objection of the defendant, and that without this evidence there is no evidence of any injury. The trial court admitted the evidence of the workmen regarding these statements of deceased on the ground that they were a part of the res gestae.
' The general rule is that evidence of the statement by the party injured declaring the circumstances of the injury, made a considerable time after the happening, is hearsay and inadmissible, but where the statement is made immediately after the injury, in the presence of the person testifying, who asserts the circumstances as observed by him, this evidence constitutes an exception to the hearsay rule and is admissible. (3 Wigmore on Evidence, Section 1746.) Many cases where the courts have admitted such evidence’ are cited by this excellent author, some on the ground that the statements were a part of the res gestae, some under the verbal-act doctrine, as being a part of the principal fact, and some as an exception to the hearsay rule. He then observes:
“It cannot matter what names or phrases the Courts chance to use, — whether they disguise the ruling under the phrase res gestae or otherwise. *265 The material thing is what the Courts actually do, not what names they use.”
And, again, this same author in Section 1747 uses this language:
“This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker’s belief as to the facts just observed by him; and may therefore be received as testimony to those facts.”
In the case of State v. Wagner, 61 Me., 178, 195, the court held such statements admissible as being analogous to dying declarations, to which necessity and sincerity impart character. Further, in 3 Wigmore on Evidence, Section 1746, above cited, the author says that within the last generation the admissibility of such evidence is firmly and unquestionably established.
The evidence was properly admitted.
This conclusion is further supported by the case of Insurance Co. v. Mosley, 8 Wall., 397; also by *266 Travelers’ Protective Association of America v. West, 102 Fed. Rep., 226.
In Insurance Co. v. Mosley, supra, the court held the principal fact to be the bodily injury. This was an insurance case.
The case of Travelers’ Protective Association of America v. West, supra, was where one West came up out of a cellar-and made statements of having bumped his head on a gas fixture. West died, and witnesses were permitted to testify to the statements made by West at the time. There was no direct evidence of the alleged accident. The United States circuit court of appeals on review held the evidence admissible .as res gestae, on the authority of Insurance Co. v. Mosley.
Union Casualty & Surety Co. v. Monday et al., 18 Col. App., 395, is also in point.
The next question then for consideration is, Did the trial court err in instructing the jury for the defendant on the -second ground of the motion, that the injury complained of was not received in the course of the employment?
Again adverting to the facts appearing in the record, there was evidence tending to show that decedent was under the continuous employment of the cartridge company from 5:11 P. M., May 6, to 6:02 A. M., May 7, with a rest and recreation period, with the sanction of the company, about the midnight hour; that during the rest period decedent-went out of the shop of the employer, on the premises of the employer, to smoke, and fell on the concrete steps leading down from the shop, resulting in injury to the spine.
*267 It was contended by defendant in error, and was so decided by the trial court, that in going out to smoke decedent was on his own business and the injury was not received in the course of his employment.
Many cases are reported where the facts are somewhat analogous, and are of assistance in arriving at what in our opinion is the trend of authority.
In the case of Chludzinski v. Standard Oil Co., 176 App. Div., 87, 162 N. Y. Supp., 225, an employe in an oil refinery went into his locker room for some unknown reason, and, after a short .time, rushed out with his shirt in flames. It was held that he suffered injuries from the fire by accident arising out of his employment, and the court observes that even if it could be found that the fire was caused by his lighting a match, for the purpose of smoking, it would not prevent a recovery, since smoking was not forbidden.
“The procuring of food or other refreshment is recognized as essential to a workman, and he does not, as a matter of course, go outside of his employment where he leaves off active work to secure food or drink.” L. R.. A., N. S., 1916A, page 58.
In Gonyea v. Canadian Pac. Ry. Co., 7 B. W. C. C., 1041, the court said at page 1045:
“The result of these cases [cited] would seem to be that, if any workman, during the hours of his employment, with the permission of his employers, ceases working for a short time for purposes of his own, the continuity of his employment is not thereby impaired,”
*268 An oft-cited case on questions arising from compensation acts is the case of M’Lauchlan v. Anderson, 4 B. W. C. C., 376, 48 Sc. L. R., 349. In that case it appears that a workman in the course of his employment was sitting on a wagon being drawn by a traction engine. He dropped his pipe, and, in attempting to recover it, fell and was injured. The Lord President‘said:
“He had a right to be at the place, riding on or walking beside the wagons; he was within the time during which he was employed, because the accident happened during the actual period of transit; and he was doing a thing which a man while working may reasonably do, — a workman of his sort may reasonably smoke, he may reasonably drop his pipe, and he may reasonably pick it up again.”
In the case of Earnshaw v. Lancashire & Y. R. Co., 5 W. C. C., 28, 115 L. T. Jour., 89, it was held that an employe in respondent’s warehouse, who, with the knowledge of his employers, goes to a cabin upon the railroad’s premises for tea, is not, while returning from the cabin, outside of his employment, and he is entitled to compensation for injuries received at that time.
In the case of Morris v. Lambeth Borough Council, 22 Times L. R., 22, it was held that an injury to a night watchman, caused by the falling of a shanty, into which he went to cook some food, because it was raining, may, in the absence of any prohibition against the use of the shanty, be considered as arising out of and in the course of his employment.
The procuring of food or other refreshments by an employe although personal in character is *269 considered so far incidental to the employe’s work that injuries received while procuring such food and refreshments may be found to arise out of and in the course of the employment, provided the employe acts in a reasonable and prudent manner, and the injuries occur while he is upon the eim ployer’s premises, or is subject as an employe to the employer’s control. See Borin’s Case, 227 Mass., 452, and cases there cited.
In the case of Holland-St. Louis Sugar Co. v. Shraluka, 64 Ind. App., 545 (116 N. E. Rep., 330), the court says at page 549:
“Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not -technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment.”
In the case of Dzikowska v. Superior Steel Co. et al., 259 Pa. St., 578, the syllabus is as follows:
“Where an employee, during an intermission in his work, -yvhile waiting ’ for material, struck a match for the purpose of lighting a cigarette and as a result his clothing, saturated with oil, by reason of the work in which he was engaged, caught on fire and he was fatally burned, an award of compensation to his dependents was properly made.”
And in the opinion the court says:
“Nor do we regard the fact that the accident resulted from his striking a match for the purpose of enabling him to smoke at that time and place, as being sufficient to debar him and his dependents from the benefits of the statute. It is not un *270 reasonable for workmen to smoke out of doors, during intervals of work, where it does not interfere with their duties.”
See also case of Whiting-Mead Commercial Co. v. Industrial Accident Commission, 178 Cal., 505, 173 Pac. Rep., 1105.
The conclusion is that where a workman does such things as are usually and reasonably incidental to the work of the employer, including the taking of refreshments, rest and smoke, which are not forbidden by the employer, and, in so doing, is injured, it cannot be said as a matter of law that the injury was received outside the course of his employment.
Whether or not the injury occurred in the course of the employment is a question of fact, and if there is any evidence tending to show this fact it becomes a question for the jury to determine. It has been uniformly held that the Workmen’s Compensation Law should be liberally construed to give effect to its beneficent purposes. We are, therefore, of opinion, upon reason and authority, supported by the cases above cited, that it was error for the trial court to say as a matter of law that there is no evidence of the injury complained of, or that the injury complained of was not received by the decedent in the course of his employment. The case should have been submitted to the jury. For this reason the judgment will be reversed and the cause remanded for a new trial.

Judgment reversed, and cause remanded.

Shohl, P. J., and Cushing, J., concur.